924 A.2d 336

**Carl Eugene JONES, Jr.**

v.

**STATE of Maryland.**

**No. 851, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

June 4, 2007.

60

62

Sherrie B. Glasser (Nancy S. Forster, Public Defender, on brief), for appellant.

Diane E. Keller (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel DEBORAH S. EYLER, BARBERA, CHARLES E. MOYLAN, JR., (Retired, specially assigned), JJ.

BARBERA, J.

The appellate courts of this State are regularly asked to consider whether in a given case there has been strict compliance with Maryland Rule 4–215, which governs the procedure by which a criminal defendant waives the constitutional right to representation by counsel. Typical appellate challenges ask whether the circuit court complied with the requirements of the rule when accepting a defendant's express waiver of the right to counsel or determining that a defendant has waived the right to counsel by inaction. Less typical is the challenge that asks whether the court complied with the rule's procedure when deciding a defendant's request to discharge current counsel and obtain new representation.

The present case involves a rarer appellate challenge. We are asked to decide what Rule 4–215 requires of a court when a defendant who has expressly waived counsel later asks for a postponement to attempt to secure representation. Such a request triggers a provision of the rule that, as far as we can discern, has not been addressed in a reported decision of either the Court of Appeals or this Court. The provision to which we refer is found at the end of section (b) of Rule 4–215 and states: "After there has been an express waiver, no postponement of a scheduled trial or hearing date will be granted to obtain counsel unless the court finds it is in the interest of justice to do so."

In this case, appellant, Carl Eugene Jones, Jr., expressly waived the right to counsel three months before trial and at several subsequent pre-trial proceedings reasserted his desire to represent himself. On the day of trial, however, he asked

the trial judge for a continuance to seek representation by counsel. The judge denied the request. Appellant, having been convicted of kidnaping, theft, and related offenses, challenges that ruling. We affirm it.

## BACKGROUND

On July 15, 2003, appellant was driving a stolen Infiniti Q45 in Baltimore City when Baltimore City police officers attempted to conduct a traffic stop of the vehicle. Appellant did not stop. Instead, he proceeded southbound on I–95 at a high rate of speed, with the police in pursuit. Appellant headed westbound on I–495 to River Road in Montgomery County, where he came to a stop. Appellant exited the Infiniti, stood in the middle of River Road, and flagged down a Mercedes SUV. Appellant forcibly removed the driver of the SUV from the vehicle, entered the SUV, and drove away. The driver's two children, ages three years and 18 months, remained in the backseat of the SUV.

A high speed chase ensued involving numerous police helicopters and approximately twenty police vehicles from various Maryland jurisdictions. Appellant drove erratically and, at times, at approximately 130 miles per hour. The chase continued for almost two hours. At one point, the police attempted to stop the SUV by altering traffic patterns on Route 50 that would force appellant into a single lane on which the police had thrown "stop sticks." Stop sticks are plastic deployments with metal spikes that gradually deflate the tires of a vehicle that runs over them. Appellant did not reduce his speed as he approached the stop sticks. Instead, he swerved around them and headed directly toward an officer, causing him to dive out of the way to avoid being struck.

Appellant continued driving at a high rate of speed for sometime thereafter, with the police in pursuit. Eventually the police forced the SUV onto the shoulder of Route 50 and to a stop. Appellant refused to exit the vehicle, requiring the police to break the windows and forcibly remove him.

Appellant was charged in both Montgomery County and Anne Arundel County with crimes arising out of the episode. He was represented by counsel in the Montgomery County case. He was convicted in that case of carjacking and second degree assault and was sentenced to a total of forty years' imprisonment for those crimes.

Proceedings in the subject Anne Arundel County case followed. Appellant faced multiple charges: two counts of first degree assault, three counts of second degree assault, two counts of kidnaping, two counts of malicious destruction of property, and one count each of resisting arrest, driving while impaired by a controlled dangerous substance, reckless driving, negligent driving, and failure to maintain a reasonable and prudent speed.

## PROCEEDINGS

Most of the claims appellant raises involve rulings concerning his pre-trial waiver of counsel and his eleventh-hour request for a continuance to seek representation. Resolution of these and other issues raised in the appeal necessitates a detailed recitation of the pre-trial proceedings.

On November 22, 2004, appellant appeared without an attorney before the Honorable Michael E. Loney, Judge of the Circuit Court for Anne Arundel County. Appellant informed Judge Loney that he had received a copy of the charging documents, and Judge Loney confirmed that appellant understood that he had a right to an attorney. Judge Loney informed appellant that if he could not afford an attorney, the Office of the Public Defender would represent him. Appellant indicated that he had spoken to an attorney, but he had not yet retained one.

On January 7, 2005, appellant appeared before the Honorable Joseph P. Manck for a status conference. Appellant did not have an attorney. The prosecutor proffered the following at the outset of the proceedings:

This Defendant is here today without an attorney. It is a very serious case he is facing. It was a continuing crime if

you will. He has already been convicted on the Montgomery [County] portion of the crime and he did get 40 years.

I have told him I think a Public Defender would be very helpful for him to have today. He has told me several times that he does not want a Public Defender. For the record, if I could just hand him a Public Defender card.

Judge Manck advised appellant of the nature of the charges and allowable penalties. Judge Manck also advised appellant of his right to, and the benefits of, legal representation:

What the State says is true, you certainly are entitled to have an attorney represent you. If you can't afford one, the Public Defender may represent you, but it is your responsibility to contact them. An attorney can be very helpful and go over the whole case with you, preparing you for trial, preparing the whole case for trial, generally protect your constitutional rights and if necessary helping you at time of sentencing.

I cannot stress enough how important it is to have counsel. If you intend on representing yourself that is certainly your right, but please don't minimize the fact that an attorney can be extremely helpful on these very serious offenses.

Your trial date is scheduled for February 17th at 9:00, and if you come in here without counsel and without a good reason for not having an attorney a Judge could find that you waived your right and make you go forward without a lawyer.

Judge Manck asked appellant if he understood his rights. Appellant responded, "Yes."

On February 17, 2005, the first scheduled trial date, appellant appeared without an attorney before the Honorable Paul A. Hackner. Appellant advised Judge Hackner that he had decided to represent himself. Judge Hackner informed appellant that he was making "a very serious mistake." The judge stated: "[E]ven though you might feel that you understand the issues and perhaps are able to represent yourself, I can

almost guarantee you that you can't. Even if you had a law degree it would be a bad idea for you to represent yourself."

Judge Hackner then asked appellant about his educational background and work history. Appellant informed the court that he was a high school graduate, a graduate of the Baltimore International Culinary College, and was employed before his incarceration as a certified chef. The following colloquy ensued:

[APPELLANT:] I decided that I would like to represent me, myself, on this case because there's a lot of motion issues in reference to this case. There's a lot of double jeopardy in reference to this case, you know, et cetera, et cetera, et cetera.

THE COURT: So do you think you know more about those issues than a trained attorney?

[APPELLANT:] No, I don't.

THE COURT: So why do you want to be—if you have these good issues, then why do you want to take those issues and take the responsibility for addressing them without the advice of somebody who understands whether they are true issues or not?

[APPELLANT:] I totally understand that, Your Honor, and I came to the decision that—actually I came to the conclusion that I would prefer to represent myself.

Following that exchange, Judge Hackner asked appellant a series of questions relating to his understanding of the benefits of an attorney. The judge asked appellant if he understood that attorneys were specially trained to raise legal issues in court in an effective manner and that an attorney could assist him in the formulation of legal arguments and the examination of witnesses. The judge further asked appellant if he understood that an attorney could assist him in obtaining a favorable disposition even if he pleaded guilty or was found guilty, and that he had a right to the assistance of a private attorney, a public defender, or a court-appointed attorney. Judge Hackner also asked appellant if he understood that he had a number of trial rights, such as the right to obtain

witnesses by compulsory process and the right to confront and cross-examine witnesses, that he likely would not exercise as effectively as an attorney. To each question, appellant responded in the affirmative.

Judge Hackner then asked: "[U]nderstanding these rights, is it still your desire to give up the right to be represented by counsel and represent yourself?" Appellant responded: "As I indicated, Your Honor, I came to the conclusion I feel as though I'd like to represent myself. I had the opportunity to talk to a few attorneys ... [i]n Anne Arundel County and I decided that I want to represent myself in reference to this case."

Appellant then informed Judge Hackner that the State had not furnished discovery materials pursuant to Maryland Rule 4–263. Appellant stated that he wanted to view all audio and video police communications, as well as all police notes, relating to the charges against him. Judge Hackner ordered the State to provide complete discovery, and he reset the trial for May 10, 2005. Thereafter, the judge found that appellant had made a knowing and voluntary waiver of his right to counsel.

On April 25, 2005, appellant appeared before the Honorable Philip T. Caroom for a hearing on several motions, including a motion to quash appellant's subpoena of the attorney who had represented him in the Montgomery County case. The prosecutor, noting that appellant had repeatedly declined to obtain counsel, asked the judge to advise appellant of his right to counsel.

Judge Caroom asked appellant if he intended to represent himself at trial. Appellant informed the judge that he had talked to private attorneys and that he decided he was "ready to proceed by defending [him]self." The following exchange occurred:

THE COURT: [S]ince you have been twice advised of your rights as to that and apparently have been represented by attorneys [in the related Montgomery County proceeding,] you understand that the attorneys might have ideas and strategies and information about how to file motions and ask

questions and prepare your case that you might not have on your own without that training and experience. Correct?

[APPELLANT:] Yes, sir.

THE COURT: And knowing that, it is still your choice to go ahead speaking for yourself[.]

[APPELLANT:] Yes, sir.

THE COURT: All right. We will find you are knowingly and voluntarily waiving that right to counsel.

Appellant then informed the judge that he had not received any discovery materials for the pending charges. He stated that the State had sent discovery materials to the Department of Corrections but had addressed the materials to the wrong inmate number.

Judge Caroom found that the State had been "trying in good faith to do what it was supposed to do[,]" and that appellant had suffered no actual prejudice from the delay. The judge deferred making a decision on appellant's motion to dismiss the charges and scheduled another hearing for the following week to address discovery-related matters.

That hearing occurred on May 3, 2005. At the outset, Judge Caroom confirmed with appellant his previously stated desire to represent himself. The hearing then turned to consideration of appellant's motion to dismiss the charges for violation of discovery rules. He argued that he had just received the State's discovery, which was 937 pages of materials, on April 28, 2005, and that the State consistently placed the wrong inmate number on his mail. The State responded by presenting four witnesses who testified about the State's compliance with appellant's discovery requests. The State insisted that it sent material to appellant on five dates in March and April 2005.

Judge Caroom found that appellant had received and signed for packets of discovery material on April 11, 2005, April 13, 2005, and April 21, 2005, "notwithstanding the fact that [the materials] carried the wrong DOC number[.]" The judge denied appellant's motion to dismiss the charges, stating, "I

think that the remedy if you asked for it might be to postpone [the trial] and give you some additional time to prepare." The following colloquy ensued:

THE COURT: If you do want more time to prepare for trial, I will send the case with you up to the Administrative Judge to consider that request. If you do not want any remedy other than dismissal and you otherwise want to go to trial the earliest possible date, which is May 10th, you can tell me that again and we will not send the case up for possible postponement.

Do you want the case to be sent for possible postponement at this time, sir, or do you want to stick with your May 10th date ... ?

[APPELLANT:] For the record, Your Honor, I choose not to postpone it today, for the record, Your Honor.

THE COURT: Okay. Well, let me tell you, sir, if you come in on May 10th and say, "I want to postpone it," that day, it is possible that an Administrative Judge might deny that request saying you were given many chances to postpone it when you were in before and now on the eve of trial you may not be permitted to say "I want to postpone," at the last minute. Do you understand that?

[APPELLANT:] Yes, sir.

Following a discussion of other matters, appellant suggested that he lacked adequate time to interview his witnesses. Judge Caroom again offered appellant a postponement, which again he refused:

THE COURT: Again, sir, if you think that more time would solve the situation I will give you a last opportunity today. You can still ask for more time. We will send the case upstairs and you can request that postponement and in all likelihood Judge Manck would grant it. Do you want to ask that, or do you want to go ahead in the position that you are in?

[APPELLANT:] As of today, Your Honor, I am not postponing this trial date.

THE COURT: Okay. Then we will ask the Clerk to note on the hearing sheet that you have declined the opportunity to request postponement in order to have more time to prepare for trial, and that you are requesting that the case go forward with the trial on May 10th.

On May 10, 2005, the morning of trial, appellant appeared without an attorney before the Honorable Pamela L. North, who was the acting administrative judge. Judge North asked appellant if he wanted to represent himself. Appellant responded in the affirmative. Judge North then advised appellant of his right to, and the benefits of, legal representation. Appellant acknowledged that he understood his right to an attorney. The judge asked appellant if he understood that an attorney "could be helpful to [him] in ways that [he] might not even realize[.]" Appellant responded, "Yes[.]"

Judge North asked appellant if he intended to waive his right to counsel and represent himself. Appellant did not respond directly to the question. Instead, he replied that he wanted a postponement because he had not yet had a chance to review all the discovery. Judge North then asked appellant: "Sir, will the request for postponement have any bearing on your—whether or not you want to have an attorney represent you?" Appellant responded: "Well, right now I haven't made that decision, but I want to contemplate with that decision in reference to [ ] my continuance." He also told the judge that he had been consulting with attorneys every other day.

Judge North informed appellant that he did not have "unlimited time to decide whether [he] want[ed] an attorney[.]" The judge stated: "Th[e] decision [to have legal representation] has to be made between your initial appearance date and your trial date, and today is your first trial date." Appellant responded that he wanted to "keep [his] options open" with respect to obtaining legal counsel. Judge North pursued the matter, discussing with appellant, at length, whether he wanted a postponement to seek representation by a public defender. Appellant first said that he did not want or need an

attorney, then he said that he wanted to "keep [his] options open," then he said that he did not want a public defender, and made clear that he would want only a private attorney or one "appointed" by the court.

After that exchange, Judge North briefly recessed to review Judge Caroom's notes from the May 3, 2005 hearing. Judge North then ruled:

[C]learly Judge Caroom had asked repeatedly it appears on that particular occasion, May 3rd, whether or not [appellant] would want a postponement. He offered to recommend to Judge Manck that you [meaning appellant] should have a postponement and that you declined that and said numerous times—he made that request to you and you said no.

[Judge Caroom] asked you about time to prepare, and you said no, you wanted to go forward on May 10th. So, sir, I think that you have been offered the opportunity to have a postponement prior to today. Now the State is disadvantaged. They have all of their witnesses here today. So I am not going to grant your request for a postponement.

Judge North further stated that she was denying appellant's request for a postponement because appellant turned down three offers of a postponement on May 3, 2005, even though he knew at that time that discovery was voluminous, and because he made no attempt to obtain representation from a public defender before trial.

Later the same day, the case proceeded to trial before the Honorable Paul G. Goetzke. Appellant immediately asked the judge for a continuance to obtain counsel. Judge Goetzke denied the request on the ground that Judge North already had ruled on the issue.

Thereafter, Judge Goetzke asked appellant if he wanted a jury trial or a bench trial. Appellant responded by requesting permission to see the administrative judge. Judge Goetzke denied appellant's request. Appellant said that he could not make an intelligent decision about whether to have a jury or bench trial, and he trusted the judge to protect his constitu-

tional rights. The judge stated that appellant would have a jury trial.

Appellant asserted that he needed counsel to help him with discovery and with interviewing witnesses. Judge Goetzke treated appellant's continued protestations as a motion to reconsider the judge's earlier ruling, which he denied. We shall say more about this exchange between Judge Goetzke and appellant later in this opinion.

The case proceeded to trial with appellant acting *pro se*. After five days of trial, the jury convicted appellant of two counts of second degree assault, two counts of kidnaping, and one count each of resisting arrest, reckless driving, negligent driving, and failure to maintain a reasonable and prudent speed. The court imposed concurrent sentences totaling thirty years' imprisonment and separate fines of $500.00 for the three driving offenses. The sentences were made to run consecutive to the sentences in the Montgomery County case.

## APPELLANT'S CONTENTIONS

Appellant presents four questions for our consideration:

1. Was appellant improperly denied his right to the assistance of counsel?

2. Were appellant's postponement requests improperly denied?

3. Did the trial court err in failing to comply with the provisions of Maryland Rule 4–215?

4. Did the trial judge err in failing to merge the offenses and sentences for speeding and negligent driving into that for reckless driving?

## DISCUSSION

### I.

### The Right to Counsel, Waiver of that Right, and Withdrawal of the Waiver

The centerpiece of appellant's prayer for appellate relief is the claim that he has been denied his right to be represented

■

by counsel. He mounts several arguments in support of the contention. He claims, in particular, that his waiver of the right to counsel did not comply with the dictates of Maryland Rule 4–215. He further contends that the court abused its discretion when, on the day of trial several months later, the court ruled that he could not withdraw the waiver and seek representation. We shall address each contention, in turn.

## A. The Right to Counsel and Waiver

■ The right to counsel is guaranteed by the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights.[1] *See Gideon v. Wainwright,* 372 U.S. 335, 342–43, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Walker v. State,* 391 Md. 233, 245, 892 A.2d 547 (2006). The right "grants the accused not only the right to be represented by counsel, but also the right to make his [or her] own defense *without* the assistance of counsel." *Gregg v. State,* 377 Md. 515, 548, 833 A.2d 1040 (2003) (citing *Faretta v. California,* 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)); *accord State v. Campbell,* 385 Md. 616, 626–27, 870 A.2d 217 (2005).

---

1. The Sixth Amendment provides:

 In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

 Article 21 of the Maryland Declaration of Rights provides:

 That in all criminal prosecutions, every man hath a right to be informed of the accusation against him; to have a copy of the Indictment, or charge, in due time (if required) to prepare for his defense; to be allowed counsel; to be confronted with the witnesses against him; to have process for his witnesses; to examine the witnesses for and against him on oath; and to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty.

 The right-to-counsel provision of Article 21 is construed in *pari materia* with the comparable provision of the Sixth Amendment. *State v. Campbell,* 385 Md. 616, 626 n. 3, 870 A.2d 217 (2005).

■ "A waiver of the right to counsel must 'ordinarily [be] an intentional relinquishment or abandonment of a known right or privilege.'" *Campbell,* 385 Md. at 627, 870 A.2d 217 (quoting *Leonard v. State,* 302 Md. 111, 119, 486 A.2d 163 (1985)). To be valid, a waiver of counsel must be " 'knowing and intelligent.'" *Richardson v. State,* 381 Md. 348, 366, 849 A.2d 487 (2004) (quoting *Fowlkes v. State,* 311 Md. 586, 609, 536 A.2d 1149 (1988)). When a defendant elects to forgo the assistance of counsel and chooses to represent himself, "the court must permit the defendant to proceed *pro se* if the request is timely and unequivocal." *Id.* at 627, 870 A.2d 217.

■ Maryland Rule 4–215 sets forth the procedure that the court must follow when a defendant expresses the desire to waive counsel and represent himself or herself. "The Rule was designed to protect both the right to counsel and the right to self-representation and ensures that decisions to waive counsel would pass constitutional muster." *Id.* at 629, 870 A.2d 217. Strict compliance with Rule 4–215 is required. *Moten v. State,* 339 Md. 407, 411, 663 A.2d 593 (1995).

Section (b) of Rule 4–215 addresses "express" waivers of the right to counsel. It provides:

(b) **Express waiver of counsel.** If a defendant who is not represented by counsel indicates a desire to waive counsel, the court may not accept the waiver until it determines, after an examination of the defendant on the record conducted by the court, the State's Attorney, or both, that the defendant is knowingly and voluntarily waiving the right to counsel. If the file or docket does not reflect compliance with section (a) of this Rule, the court shall comply with that section as part of the waiver inquiry. The court shall ensure that compliance with this section is noted in the file or on the docket. At any subsequent appearance of the defendant before the court, the docket or file notation of compliance shall be prima facie proof of the defendant's express waiver of counsel. After there has been an express waiver, no postponement of a scheduled trial or hearing

date will be granted to obtain counsel unless the court finds it is in the interest of justice to do so.

Section (a) of the rule, referred to in section (b), outlines those matters that the court must address with the defendant to ensure that the waiver of counsel is knowing and voluntary. Section (a) provides:

(a) **First appearance in court without counsel.** At the defendant's first appearance in court without counsel, or when the defendant appears in the District Court without counsel, demands a jury trial, and the record does not disclose prior compliance with this section by a judge, the court shall:

(1) Make certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.

(2) Inform the defendant of the right to counsel and of the importance of assistance of counsel.

(3) Advise the defendant of the nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any.

(4) Conduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel.

(5) If trial is to be conducted on a subsequent date, advise the defendant that if the defendant appears for trial without counsel, the court could determine that the defendant waived counsel and proceed to trial with the defendant unrepresented by counsel.

The clerk shall note compliance with this section in the file or on the docket.

We have recounted at some length what occurred on the six occasions before trial at which appellant appeared in court without counsel and asserted his desire to proceed to trial without counsel. Each of the judges who presided over those pre-trial proceedings informed appellant of the right to counsel and discussed with him how counsel could assist him. And more than one judge discussed with appellant the nature of

the charges and the maximum penalties. It was on February 17, 2005, however, that appellant formally waived his right to counsel.

■ Appellant does not contend that Judge Hackner, who presided at the February 17, 2005 proceeding, failed to conduct a colloquy to ensure that appellant was "knowingly and voluntarily waiving the right to counsel," as required by 4–215(b). Appellant's challenge to the validity of the waiver on that date focuses solely upon the requirement in (b) that states, "*if the file or docket does not reflect compliance with section (a)* of the Rule, the court shall comply with that section as part of the waiver inquiry." Appellant argues that the record contains no indication that Judge Hackner actually was aware of a docket entry reflecting prior compliance with Rule 4–215(a). Assuming that lack of awareness on the part of Judge Hackner, appellant argues that the judge was required to repeat all of the Rule 4–215(a) advisements before finding that appellant knowingly and voluntarily waived his right to counsel.

The State responds that, when (as in this case) the transcripts of prior proceedings reflect actual compliance with the requirements of Rule 4–215(a), it "would truly represent the triumph of form over substance" to hold that it is "reversible error not to repeat the entire advisement required by subsection (a) before finding a valid waiver under subsection (b)."

We are inclined to agree with the State that to reverse a conviction in such a case would seem to exalt form over substance. But we do not have to go so far in the present case, because the docket entries for the November 22, 2004 and January 7, 2005 hearings demonstrate that appellant was advised of his rights pursuant to Maryland Rule 4–213, which encompasses compliance with Rule 4–215. Rule 4–213, captioned "Initial appearance of defendant," provides in part:

(c) **In circuit court following arrest or summons.** The initial appearance of the defendant in circuit court occurs when the defendant (1) is brought before the court by reason of execution of a warrant pursuant to Rule 4–212(e)

or (f)(2), or (2) appears in person or by written notice of counsel in response to a summons. **In either case, if the defendant appears without counsel the court shall proceed in accordance with Rule 4–215.** If the appearance is by reason of execution of a warrant, the court shall inform the defendant of each offense with which the defendant is charged, ensure that the defendant has a copy of the charging document, and determine eligibility for pretrial release pursuant to Rule 4–216.

(Emphasis added.)

The docket entry for the hearing conducted on November 22, 2004 reads, in part: "DEFENDANT PRESENT IN COURT, DEFENDANT ADVISED OF RIGHTS PURS[UANT] TO MD [RULE] 4–213, DEFENDANT CLAIMS PRIVATE ATTY TO REPRESENT ... DEFENDANT SERVED IN OPEN COURT WITH CHARGING DOCUMENT." The docket entry for the hearing conducted on January 7, 2005, reads, in part: "COUNSEL HEARD. PASS FOR TRIAL. TRIAL DATE 2/17/05 AT 9:00. ADVISED OF RIGHTS RULE 4–213. DEFENDANT GIVEN [OFFICE OF THE PUBLIC DEFENDER] CARD."

The transcripts of the proceedings on those two dates comport with the docket entries reflecting compliance with Maryland Rule 4–215. At the November 22, 2004 proceeding, appellant appeared in court without an attorney and informed Judge Loney that he had received a copy of the charging documents. Judge Loney confirmed that appellant understood that he had a right to an attorney, and the judge informed him that if he could not afford an attorney, the Office of the Public Defender could represent him. On January 7, 2005, appellant again appeared in court without an attorney. Judge Manck advised appellant of the nature of the charges against him and the possible penalties. Judge Manck further advised appellant of his right to, and the benefits of, legal representation.

To be sure, before accepting appellant's waiver, Judge Hackner did not make certain that appellant had received a

copy of the charging document containing notice of the right to counsel, nor did Judge Hackner advise appellant of the nature of the charges and the allowable penalties, as required by Rule 4–215(a)(1) and (3). Nevertheless, those requirements were plainly satisfied at the earlier proceedings before Judge Loney and Judge Manck, and the docket entries reflect as much.

We have held that the five requirements set forth in Maryland Rule 4–215(a) need not be established at a single proceeding. *Broadwater v. State,* 171 Md.App. 297, 321–22, 909 A.2d 1112 (2006), *cert. denied,* 396 Md. 524, 914 A.2d 768 (2007). On this record, we have no difficulty whatsoever in concluding that there was full compliance with Rule 4–215(b), including the requirement in that section that the record reflect compliance with the provisions of section (a) of the rule. It follows that Judge Hackner did not err in finding, on February 17, 2005, that appellant had expressly waived his right to counsel pursuant to the rule.

### B. Withdrawal of the Waiver

Appellant also contends that Judge Goetzke denied him his right to counsel when the judge declined, on the first day of trial, to permit him to secure counsel. Appellant's argument has two parts. He argues that Judge Goetzke abused his discretion in denying him: (1) a postponment to secure counsel, and (2) the opportunity to return to Judge North, the acting administrative judge, to seek a postponement from her. Appellant insists that Judge Goetzke erroneously ruled that appellant had no choice but to proceed to trial *pro se,* having already waived his right to counsel.

We have seen that Rule 4–215(b) addresses the procedure for ensuring a valid waiver of the right to counsel. We also mentioned at the outset of this opinion that the same section of the rule also addresses the possibility that a defendant, having expressly waived the right to counsel, might have a change of mind and desire to withdraw the waiver and secure counsel. We repeat the pertinent language: "After there has been an express waiver no postponement of a scheduled trial

or hearing date will be granted to obtain counsel unless the court finds it is in the interest of justice to do so."

Appellant does not refer at all to this language in Rule 4–215(b); the State, however, recognizes the applicability of it to appellant's claim. The State counters the claim by noting that appellant presented a last minute request for leave to obtain counsel not only from Judge Goetzke, but also from Judge North, earlier that same day. The State argues that Judge Goetzke's decision can fairly be reviewed only when it is considered in light of Judge North's ruling. And the State contends that both judges exercised proper discretion in denying appellant's request. We agree with the State.

Our research discloses no reported decision of the Court of Appeals or this Court that construes the language of Rule 4–215(b) providing that no postponement of a scheduled trial date "will be granted unless the court finds it is in the interest of justice to do so." Nonetheless, if the words of the rule, "construed in their common and everyday meaning, are clear and unambiguous," we will give effect to the rule as it is written. *Gray v. State*, 388 Md. 366, 376, 879 A.2d 1064 (2005).

■ We certainly do not read Rule 2–415(b) as prohibiting a defendant from changing his or her mind before trial and seeking representation by counsel. Such a reading could well run afoul of the right to counsel embodied in the Sixth Amendment and Article 21. The rule nevertheless is plain that a defendant who undertakes to pursue that course of action is not entitled to an automatic postponement of a scheduled trial or hearing date to obtain counsel. Indeed, the rule makes clear that, to secure a postponement under that circumstance, the onus is upon the defendant to persuade the court to find that a postponement is in the "interest of justice."

What is meant by the phrase "interest of justice" is not spelled out in Rule 4–215. But that phrase is found elsewhere in the Maryland Rules of Procedure, and its meaning has been illuminated in caselaw. For example, Rule 4–331(a), which

addresses motions for new trial, states: "On motion of the defendant filed within ten days after a verdict, the court, in the interest of justice, may order a new trial." Judge Moylan, writing for this Court in *Love v. State*, 95 Md.App. 420, 427, 621 A.2d 910 (1993), characterized the latitude accorded the trial court to grant a new trial in the "interest of justice" as "virtually open-ended." Similarly, the Court of Appeals, citing *Love*, has noted that the phrase "interests of justice" has been interpreted to include a wide array of possibilities. *Gray*, 388 Md. at 382 n. 7, 879 A.2d 1064 (addressing the phrase in the context of Maryland Code (2001), § 7–104 of the Criminal Procedure Article, which permits a court to reopen a postconviction proceeding in "the interests of justice").

Further, there is no doubt that it is within the court's discretion to deny a postponement on the basis of the defendant's failure to demonstrate that it would be "in the interest of justice" to grant one.[2] This conclusion is in accord with the general rule that the decision to grant or deny a postponement is discretionary. *Abeokuto v. State*, 391 Md. 289, 329, 893 A.2d 1018 (2006).

Because the decision to grant a postponement "in the interest of justice" is discretionary, we may disturb a court's denial of the request only if that decision is an abuse of discretion. A court's discretionary ruling will generally not be deemed an abuse of discretion unless it is "well removed from any center mark imagined by the reviewing court" or is "beyond the fringe of what [the reviewing court] deems minimally acceptable." *Gray*, 388 Md. at 383, 879 A.2d 1064 (internal quotation marks and citations omitted).

Appellant has not persuaded us that Judge Goetzke abused his discretion in declining to grant appellant a continuance to attempt to secure the representation of a lawyer at trial. We note at the outset, as the State urges us to do, that Judge

---

2. Appellant, though not addressing the postponement decision by reference to Rule 4–215(b), nevertheless acknowledges that the decision is discretionary.

Goetzke's decision can only be fairly understood and assessed in light of the ruling earlier that day by Judge North, who, as the administrative judge designee, denied a similar request by appellant.[3]

We begin our consideration of Judge Goetzke's rulings by stating the obvious: Appellant's request to be given the chance to obtain counsel came at the start of trial. The State was prepared to go forward, and some of its witnesses had traveled from Baltimore City and Montgomery County to be present for trial.

Appellant's stated reason for wanting the assistance of counsel was that he was unable to decide for himself whether he should elect a bench trial in lieu of a jury trial. Judge Goetzke denied that request upon learning from the prosecutor that Judge North "ha[d] already ruled on these issues."

Judge Goetzke then asked appellant, a second time, whether he wanted a jury or bench trial. Appellant replied, "[A]t this particular time, I don't know. I don't know what's best for me as far as my constitutional right is concerned, for the record." The court addressed the matter by thoroughly reviewing with appellant the nature of a jury trial and the differences between it and a bench trial.

There ensued further discussion among the court, the prosecutor, and appellant about how trial would proceed. During that discussion, appellant asked the court for "some type of representation." The prosecutor again confirmed that Judge North had "discussed it [presumably the matter of representation] with [appellant] extensively." Judge Goeztke then said, "That issue has already been decided, so that issue is not in front of me."

After an extensive inquiry into appellant's educational background, and his mental and physical condition, Judge Goetzke

---

**3.** Appellant separately challenges Judge North's denial of a postponement that he had sought to permit him additional time to review the discovery the State had supplied. We address that contention later in this opinion.

ascertained that appellant was competent to elect a bench trial, if that was his wish. When appellant expressed no inclination to waive his right to be tried by a jury,[4] Judge Goetzke directed that appellant would have a jury trial.

Shortly thereafter, appellant again asked for "the opportunity to call some representation," and again the judge denied the request. Appellant persisted in his complaints and, eventually, he expressly asked for a postponement and "a Court-appointed lawyer or the Public Defender Office in reference to this case." Judge Goetzke denied the request.

The exchange between Judge Goetzke and appellant that we have summarized (the exchange itself takes up a full 60 pages of transcript) demonstrates that Judge Goetzke did not err or abuse his discretion either by (1) denying appellant's request for a postponement to attempt to secure counsel, or (2) refusing to return appellant to Judge North to have her consider his postponement request, as appellant contends.

■■■ We first take up the second part of the contention. Appellant argues that Judge Goetzke should have sent him back to Judge North because the only issue before her, earlier that day, was whether appellant should have a postponement to permit him more time to review the State's discovery. We disagree. Several times during the hearing before Judge North appellant made plain to her that he desired a postponement, not simply to have more time to review the State's discovery, but also to obtain counsel representation. Appellant stated during the hearing that he wanted "to keep his options open" regarding representation, and that he was "in limbo as far as getting some counseling in reference to [the] charges." Appellant claimed, moreover, that he was consulting with attorneys every other day, and he said that he would accept representation from private counsel or a pro bono attorney. After appellant explained that he was indigent,

---

4. Maryland Rule 4-246(a) provides: "In the circuit court a defendant having a right to trial by jury shall be tried by a jury unless the right is waived pursuant to section (b) of this Rule. If the waiver is accepted by the court, the State may not elect a trial by jury."

Judge North asked him if he was willing to accept representation by a public defender. Appellant responded that he was not. It is clear to us that Judge North denied the postponement both because appellant had declared before Judge Caroom at a hearing the previous week that he did not want a postponement to review the discovery materials, and because he had "made no attempt to get a Public Defender[.]"

There was no cause to have appellant return to Judge North for her to reconsider a request that, in essence, she already had denied that very day. Judge Goetzke did not abuse his discretion by denying appellant's request to return to Judge North.

We likewise discern no abuse of discretion attendant to Judge Goetzke's refusal to grant appellant a continuance of trial to attempt to secure counsel. Indeed, we discern nothing in the record that compels the conclusion that the interest of justice required a continuance. Notwithstanding the repeated suggestions by various judges of the circuit court that he seek representation by counsel, appellant insisted throughout the five months preceding trial that he wanted to represent himself. He persisted in that view on the very morning of trial, during the proceedings before Judge North. It was only at the start of trial a short time later that appellant decided he would like the assistance of counsel.

The Court of Appeals has expressed, in a related context, a sentiment that is particularly apt in this case. In *Fowlkes v. State, supra,* the Court was faced with the question of whether the trial court had erred in finding no meritorious reason for the defendant's request on the day of trial to discharge his attorney. Affirming the trial court's decision to deny the postponement and proceed with trial, the Court stated:

> Courts have consistently held that the right to counsel does not give an accused the unfettered right to discharge current counsel and demand different counsel shortly before or at trial. *Although the right to counsel generally embodies a right to retain counsel of one's choice, a defendant may not*

*manipulate this right so as to frustrate the orderly admin-
istration of criminal justice.*

311 Md. at 605, 536 A.2d 1149 (emphasis added). *See also
Grandison v. State*, 341 Md. 175, 274, 670 A.2d 398 (1995)
(stating that Rule 4–215 "attempts to balance the constitution-
al right of a defendant in a criminal prosecution to the
assistance of counsel against the State's need to prevent the
manipulation of that right so as to frustrate the orderly
administration of criminal justice . . ."), *cert. denied,* 519 U.S.
1027, 117 S.Ct. 581, 136 L.Ed.2d 512 (1996).

Although Judge Goetzke did not express the thought, he
surely would not have been wrong to interpret appellant's
eleventh-hour request for a continuance to obtain counsel as a
manipulative effort to frustrate the orderly administration of
justice. Regardless, appellant's stated reasons for wanting an
attorney obviously fell short of convincing Judge Goetzke that
"the interest of justice" required a continuance to give appel-
lant the chance to attempt to obtain representation. Nothing
in the record persuades us to disturb that discretionary deci-
sion.[5]

## II.

### Other Grounds for Postponement

 Appellant takes issue with Judge North's refusal to
grant him a postponement of trial on the ground that he
required more time to review the State's discovery. He
argues that his receipt of discovery materials in excess of 900

---

5. Appellant asserts in a footnote that Judge Goetzke also erred in
denying appellant's request for counsel at sentencing. On the day
scheduled for disposition, appellant announced that a family member
had talked to an attorney, but that attorney was "currently out of the
country." Appellant claimed that a call to the attorney's secretary
would confirm that the attorney would represent him. Appellant ad-
mitted, however, that the attorney had not been paid. The court
replied: "All right, sir. You have been using this issue time and time
and time and time again in your case, and that is an attempt to buy
you—to get postponements in this case, because you show up at court
without a lawyer and then you ask for one." The court declined to
continue the sentencing proceeding. There was no abuse of discretion.

pages twelve days before trial constituted good cause to warrant a postponement. Appellant also argues that Judge North's reliance on Judge Caroom's notes from a hearing the preceding week reflects a failure to exercise discretion, thereby constituting an abuse of discretion. This issue does not detain us long.

Maryland Rule 4–271(a), captioned "Trial date in circuit court," provides, in part:

On motion of a party, or on the court's initiative, and for good cause shown, the county administrative judge or that judge's designee may grant a change of a circuit court trial date. If a circuit court trial date is changed, any subsequent changes of the trial date may be made only by the county administrative judge or that judge's designee for good cause shown.

Judge North's reliance on Judge Caroom's notes from the May 3, 2005 hearing does not constitute a failure to exercise discretion. Judge North reviewed Judge Caroom's notes, taking notice of appellant's refusal to accept Judge Caroom's repeated offers of a postponement to permit him time to review the discovery materials. Judge North, however, did not merely defer to Judge Caroom's decision on the issue. Rather, she discussed appellant's postponement request with him at length.

"The decision whether to grant a request for continuance is committed to the sound discretion of the court." *Abeokuto*, 391 Md. at 329, 893 A.2d 1018. Because Judge North did not abuse her discretion, we will not disturb her denial of appellant's postponement request.

### III.

### Merger

At sentencing, Judge Goetzke imposed three fines of $500.00 each for appellant's convictions of negligent driving, reckless driving, and failure to maintain a reasonable and prudent speed, which appellant refers to simply as "speeding." Appel-

lant argues that only one fine should have been imposed because the three offenses are the "same" for purposes of the double jeopardy prohibition against multiple offenses.

The State responds that an accused can be found guilty of driving negligently or recklessly without speeding. Therefore, appellant's conviction for speeding does not merge with his convictions for negligent driving and reckless driving. The State further contends that the offenses of negligent driving and reckless driving do not merge because each offense requires proof of a fact that the other does not.

■■■ "The doctrine of merger of offenses for sentencing purposes is premised in part on the Double Jeopardy Clause of the Fifth Amendment of the U.S. Constitution, applicable to state court proceedings via the Fourteenth Amendment." *Abeokuto*, 391 Md. at 352, 893 A.2d 1018. To determine whether one offense merges into another, Maryland courts apply the "required evidence" test derived from *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The Court of Appeals summarized the test in *Abeokuto* as follows:

> The required evidence test focuses upon the elements of each offense; if all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter. Stated another way, the required evidence is that which is minimally necessary to secure a conviction for each [ ] offense. If each offense requires proof of a fact which the other does not, or in other words, if each offense contains an element which the other does not, there is no merger under the required evidence test even though both offenses are based upon the same act or acts. But, where only one offense requires proof of an additional fact, so that all elements of one offense are present in the other, and where both offenses are based on the same act or acts, [ ] merger follows [ ].

391 Md. at 353, 893 A.2d 1018 (citation and internal quotation marks omitted).

 When merger of two offenses is required, the court may not impose separate sentences; rather, the court must impose a sentence only for the offense that has an additional element or elements. *Id.*

We do not know the particular conduct upon which the jury relied to support the three driving convictions. It is certain that neither the instructions nor the closing argument of the State asked the jury to consider separate conduct as the basis for each charge. In that situation, we must resolve the ambiguity in favor of appellant and assume that the jury based all of the convictions on the same conduct. *See Snowden v. State,* 321 Md. 612, 618–19, 583 A.2d 1056 (1991).

Maryland Code (1977, 2006 Repl.Vol.), § 21–901.1 of the Transportation Article ("TA"), captioned "Reckless and negligent driving," provides:

(a) *Reckless driving.*—A person is guilty of reckless driving if he drives a motor vehicle:

(1) In wanton or willful disregard for the safety of persons or property; or

(2) In a manner that indicates a wanton or willful disregard for the safety of persons or property.

(b) *Negligent driving.*—A person is guilty of negligent driving if he drives a motor vehicle in a careless or imprudent manner that endangers any property or the life or person of any individual.

TA § 21.801(a) provides: "A person may not drive a vehicle on a highway at a speed that, with regard to the actual and potential dangers existing, is more than that which is reasonable or prudent under the conditions." We have construed § 21.801 as "requir[ing] drivers to reduce speed, from what otherwise would be a lawful maximum speed, to that which is reasonable or prudent in light of existing conditions that present an 'actual or potential danger.'" *Warren v. State,* 164 Md.App. 153, 163, 882 A.2d 934 (2005). We further explained that "the plain language of the section suggests that the conditions requiring a reduced speed under § 21–801 are not those created by driving behavior, but rather are those exter-

nal conditions to which a driver must react." *Id.* at 164–65, 882 A.2d 934.

■ We agree with appellant that the offenses of negligent driving and reckless driving are the same for double jeopardy purposes. We think that it "splits hairs" to conclude anything other than that negligent driving, *i.e.*, driving in a careless or imprudent manner that endangers property or the life or person of any individual, is a lesser included offense of reckless driving, *i.e.*, driving with a wanton or willful disregard for the safety of persons *or* property. *Cf. Pineta v. State*, 98 Md.App. 614, 622, 634 A.2d 982 (1993) (stating that there is no analytical difference between negligent driving and reckless driving for purposes of determining whether these offenses should merge into the offense of manslaughter by automobile, which requires proof that the defendant acted with gross negligence). We therefore conclude that appellant's sentence on the negligent driving offense must be vacated under the required evidence test.

■ Likewise, driving at a speed that, given the "actual and potential dangers existing" is "more than that which is reasonable and prudent under the conditions," TA § 21.801(a), is the "same" for purposes of the required evidence test as driving in a "manner that indicates a wanton or willful disregard for the safety of persons or property," TA § 21–109.1(a). Therefore, the offense of failing to maintain a reasonable and prudent speed is a lesser included offense of reckless driving, and must be vacated, accordingly.

**IMPOSITION OF $500.00 FINES UPON CONVICTIONS OF NEGLIGENT DRIVING AND FAILURE TO MAINTAIN A REASONABLE AND PRUDENT SPEED VACATED; JUDGMENTS AFFIRMED IN ALL OTHER RESPECTS. APPELLANT TO PAY 90% OF THE COSTS; ANNE ARUNDEL COUNTY TO PAY 10%.**