941 A.2d 1082

**Carl Eugene JONES, Jr.**

**v.**

**STATE of Maryland.**

**No. 65 Sept.Term, 2007.**

Court of Appeals of Maryland.

Feb. 13, 2008.

Michael R. Braudes, Asst. Public Defender (Nancy S. Forster, Public Defender, and Sherrie B. Glasser, Asst. Public Defender, Baltimore, MD), on brief, for Petitioner.

Diane E. Keller, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Respondent.

ARGUED BEFORE BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, JJ., and ALAN M. WILNER and DALE R. CATHELL, JJ. (Retired, specially assigned).

HARRELL, Judge.

## I

Carl Eugene Jones, Jr. (Petitioner) asks us to determine whether his day-of-trial request for a postponement to secure counsel and continue review of discovery responses was denied properly. In urging us to conclude it was not, he relies on two grounds. The first is that the trial court improperly exercised its discretion in denying Jones counsel, where, after a concededly knowing and voluntary initial waiver of counsel, Jones effectively elected to withdraw his waiver and requested coun-

sel before trial began. Second, Jones complains that, as of the day of trial, he had not had sufficient time to review discovery responses from the State and, therefore, the trial court improperly exercised its discretion in denying a postponement. In addition to these arguments, he also points to assertedly improper procedural consideration of his postponement request by the trial judge and the County Administrative Judge's designee.

## II

On 15 July 2003, Baltimore City police attempted to conduct a traffic stop on a stolen car being driven by Jones. Instead of stopping, Jones proceeded at a high rate of speed south on Interstate 95. Pursuit continued through Montgomery County west on Interstate 495 to River Road. A police helicopter pilot observed Jones exit the car at this point, flag down another vehicle, forcibly remove its driver, and commandeer the vehicle. Two small children remained in the back seat of the second vehicle as the chase continued.

The chase went on for nearly two hours, during which Jones drove erratically and at speeds up to 130 miles per hour. Finally, he stopped the vehicle on the shoulder of Maryland Route 50 in Anne Arundel County, but refused to exit. Police officers broke the windows and forcibly removed him.

Jones was charged in Montgomery County and Anne Arundel County with a number of crimes arising out of the incident, including kidnaping, carjacking, and assault. In his trial in the Circuit Court for Montgomery County, Jones, represented by counsel, was convicted of charges of carjacking and second degree assault. He was sentenced to 40 years' imprisonment. While he was incarcerated in Montgomery County, the State commenced proceedings against him in the Circuit Court for Anne Arundel County. Jones, who represented himself in the Anne Arundel County proceedings, was convicted by a jury of two counts of second degree assault, two counts of kidnapping, one count of resisting arrest, one count of reckless driving, and one count of failure to maintain a reasonable and prudent

speed. Jones was sentenced to 30 years' imprisonment and fines of $500 for each of the three driving offenses. The 30–year term of imprisonment in the Anne Arundel County prosecution was to run consecutive to the 40–year term sentence from the Montgomery County prosecution. The present issues arise out of the Anne Arundel County proceedings.

In the Circuit Court for Anne Arundel County, Jones's initial appearance was before Judge Michael E. Loney on 22 November 2004. He was advised at that time of his rights pursuant to Maryland Rule 4–213(c).[1] The transcript of the proceeding notes in pertinent part the following:

> The Court: I just want to make sure today that you understand you have a right to be represented by an attorney on these charges. If you cannot afford a lawyer the Office of Public Defender will represent you if you apply and also if you qualify. Have you made any arrangements for any attorney to represent you on these charges?
>
> Jones: As I indicated, I have been talking to an attorney in reference to this case.
>
> . . . .
>
> But, no, I haven't retained one.

At his next appearance, a status conference on 7 January 2005 before the County Administrative Judge, the Honorable Joseph P. Manck, Jones again was advised of his right to counsel. The transcript of the status conference reveals the following:

---

1. Maryland Rule 4–213 states in relevant part:

    (c) In Circuit Court Following Arrest or Summons. The initial appearance of the defendant in circuit court occurs when the defendant (1) is brought before the court by reason of execution of a warrant pursuant to Rule 4–212(e) or (f)(2), or (2) appears in person or by written notice of counsel in response to a summons. In either case, if the defendant appears without counsel the court shall proceed in accordance with Rule 4–215. If the appearance is by reason of execution of a warrant, the court shall inform the defendant of each offense with which the defendant is charged, ensure that the defendant has a copy of the charging document, and determine eligibility for pretrial release pursuant to Rule 4–216.

The State: This Defendant is here today without an attorney. It is a very serious case he is facing. . . . I have told him I think a Public Defender would be very helpful for him to have today. He has told me several times that he does not want a Public Defender. For the record, if I could just hand him a Public Defender card.

. . . .

The Court: What the State said is true, you certainly are entitled to have an attorney represent you. If you can't afford one, the Public Defender may represent you, but it is your responsibility to contact them. An attorney can be very helpful and go over the whole case with you, preparing you for trial, preparing the whole case for trial, generally protect your constitutional rights and if necessary helping you at time of sentencing. I cannot stress enough how important it is to have counsel. If you intend on representing yourself that is certainly your right, but please don't minimize the fact that an attorney can be extremely helpful on these very serious offenses. Your trial date is scheduled for February 17th at 9:00, and if you come in here without counsel and without good reason for not having an attorney a judge could find that you waived your right and make you go forward without a lawyer. Do you understand all those rights, sir?

Jones: Yes, sir.

On 17 February 2005, the first scheduled trial date, Jones, without counsel, appeared before a third judge, the Honorable Paul A. Hackner. He again was advised of his rights according to Maryland Rule 4–213 and found to have waived his right to counsel in accordance with Maryland Rule 4–215.[2]

---

**2.** This rule reads in relevant part:

(a) First Appearance in Court Without Counsel. At the defendant's first appearance in court without counsel, or when the defendant appears in the District Court without counsel, demands a jury trial, and the record does not disclose prior compliance with this section by a judge, the court shall:

(1) Make certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.

The relevant colloquy between Judge Hackner and the parties was as follows:

> The State: Your Honor, just to catch the Court up to speed, I have spoken with Defendant, and the first thing I asked

---

(2) Inform the defendant of the right to counsel and of the importance of assistance of counsel.

(3) Advise the defendant of the nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any.

(4) Conduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel.

(5) If trial is to be conducted on a subsequent date, advise the defendant that if the defendant appears for trial without counsel, the court could determine that the defendant waived counsel and proceed to trial with the defendant unrepresented by counsel. The clerk shall note compliance with this section in the file or on the docket.

(b) Express Waiver of Counsel. If a defendant who is not represented by counsel indicates a desire to waive counsel, the court may not accept the waiver until after an examination of the defendant on the record conducted by the court, the State's Attorney, or both, the court determines and announces on the record that the defendant is knowingly and voluntarily waiving the right to counsel. If the file or docket does not reflect compliance with section (a) of this Rule, the court shall comply with that section as part of the waiver inquiry. The court shall ensure that compliance with this section is noted in the file or on the docket. At any subsequent appearance of the defendant before the court, the docket or file notation of compliance shall be prima facie proof of the defendant's express waiver of counsel. After there has been an express waiver, no postponement of a scheduled trial or hearing date will be granted to obtain counsel unless the court finds it is in the interest of justice to do so.

. . . .

(d) Waiver by Inaction—Circuit Court. If a defendant appears in circuit court without counsel on the date set for hearing or trial, indicates a desire to have counsel, and the record shows compliance with section (a) of this Rule, either in a previous appearance in the circuit court or in an appearance in the District Court in a case in which the defendant demanded a jury trial, the court shall permit the defendant to explain the appearance without counsel. If the court finds that there is a meritorious reason for the defendant's appearance without counsel, the court shall continue the action to a later time and advise the defendant that if counsel does not enter an appearance by that time, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds that there is no meritorious reason for the defendant's appearance without counsel, the court may determine that the defendant has waived counsel by failing or refusing to obtain counsel and may proceed with the hearing or trial.

him today was whether or not he wanted a lawyer to represent him. And he told me he had a lawyer, and I asked who it was and he said, "Me." And I went on to discuss the matter with him further, and he reminded me that at the status conference that I talked to him then, that he said he didn't have a lawyer, that he didn't want a lawyer, and that I asked him to take a green Public Defender card. He reminded me that we had already had that conversation and that there was nothing more to talk about with respect to him getting a lawyer, so I just ask— and I know Judge Manck at the time of the status conference advised him of his rights, but perhaps just another advisement.

. . . .

The Court: All right. Mr. Jones, is it your intention to proceed without a lawyer, or do you wish to have a lawyer represent you?

Jones: Proceed without a lawyer, Your Honor.

The Court: All right. Now, I am going to ask you a whole bunch of questions to make sure that you are clear on what your rights are and that you knowingly and voluntarily are giving up your rights to an attorney. I am going to start by telling you I think it is a very serious mistake that you are making, because you are facing charges that could result in a significant amount of incarceration. And even though you might feel that you understand the issues and perhaps are able to represent yourself, I can almost guarantee you that you can't. Even if you had a law degree it would be a bad idea for you to represent yourself. But I am going to go through this process with you, and I hope that you will listen to me carefully and make an intelligent decision. How much education have you had?

Jones: I'm a high school graduate. Also Baltimore International Culinary College graduate.

The Court: All right, and so I assume you can read and write?

Jones: Yes, sir.

. . . .

The Court: I presume that you have not had any legal training, is that correct?

Jones: That's correct.

The Court: And tell me why you want to represent yourself?

. . . .

Jones: I decided that I would like to represent me, myself, on this case because there's a lot of motion issues in reference to this case. There's a lot of double jeopardy in reference to this case, you know, et cetera, et cetera, et cetera.

The Court: So you think you know more about those issues than a trained attorney?

Jones: No, I don't.

The Court: So why do you want to be—if you have these good issues, then why do you want to take those issues and take the responsibility for addressing them without the advice of somebody who understands whether they are true issues or not?

Jones: I totally understand that, Your Honor, and I came to the decision that—actually I came to the conclusion that I would prefer to represent myself.

The Court: Do you understand that lawyers are specially trained and they understand those issues that you are addressing and they can recognize issues that perhaps you haven't thought of and raise those in an effective way before the Court so that your likelihood of success on those issues is significantly greater than if you present them yourself? Do you understand that?

Jones: Yes, sir.

The Court: And do you understand that an attorney can assist you in determining whatever defenses you might have and any mitigation that there might be in the event that you are found guilty? Do you understand that?

Jones: Yes, sir.

The Court: Do you understand that an attorney can assist you in preparing and conducting the trial by cross-examining State witnesses, by calling witnesses for you on your behalf, by making legal arguments, by making presentation of facts that might be favorable to you? Do you understand that, sir?

Jones: Yes, sir.

The Court: Do you understand that even if you decide to plead guilty or you are found guilty an attorney can assist you in obtaining a favorable disposition? Do you understand that?

Jones: Yes, sir.

The Court: Do you understand also, sir, that if you are unable to hire a private attorney, the Public Defender or a Court-appointed [attorney] would be available to represent you? Do you understand?

Jones: Yes, sir.

The Court: And that you would have a number of trial rights which you are going to still have, but you are not likely to be able to exercise them as effectively. Those are the rights to call witnesses on your behalf; the rights to confront and cross-examine those witnesses; the right to obtain witnesses by compulsory process, in other words, by subpoenas; the right to require proof beyond a reasonable doubt. Those are the rights that you have, but an attorney could assist you in exercising those rights more effectively. Do you understand that?

Jones: I understand that part, Your Honor, but what I'm in limbo in reference to that part is the fact that why is it there is a difference from actually having a legal counsel on my behalf instead of me to present those same motions or to present those same issues.

The Court: You have the right to present them just like I have a right to fix my toilet. I am just not as good as a plumber. That is all I am telling you.

. . . .

Okay? If I want to fix my toilet or try to tune my car, I can do it. But if that car blows up in my face because I don't know what I am doing then it is my fault for not going to a mechanic, and that is what you are doing here. If this case blows up in your face you can't go to the Court of Appeals and say, "Well, I've changed my mind. I decided I'm not as smart as a lawyer, and therefore I want a new trial." It won't happen. Do you understand that?

Jones: Yes, sir.

The Court: Because the law applies to you just like it does for a lawyer, and the rules of evidence apply to you the same way. The Court can't assist you in trying this case. All I can do is do the same thing I would do if you were represented by counsel. Understand?

Jones: Yes, sir.

The Court: So understanding these rights, is it still your desire to give up the right to be represented by counsel and represent yourself?

Jones: As I indicated, Your Honor, I came to the conclusion I feel as though I'd like to represent myself. I had the opportunity to talk to a few attorneys.

. . . .

In Anne Arundel County and I decided that I want to represent myself in reference to this case.

The Court: All right.

Before formal acceptance of his express waiver of counsel, Jones complained that the State had not provided him with discovery materials sought pursuant to Maryland Rule 4–263.[3]

---

**3.** In relevant part, this rule reads:

Discovery and inspection in circuit court shall be as follows:
(a) Disclosure Without Request. Without the necessity of a request, the State's Attorney shall furnish to the defendant:
(1) Any material or information tending to negate or mitigate the guilt or punishment of the defendant as to the offense charged;
(2) Any relevant material or information regarding: (A) specific searches and seizures, wire taps or eavesdropping, (B) the acquisition of statements made by the defendant to a State agent that the

He expressed a desire to view audio and video police communications and police notes relating to the charges. He assert-

State intends to use at a hearing or trial, and (C) pretrial identification of the defendant by a witness for the State.

(b) Disclosure Upon Request. Upon request of the defendant, the State's Attorney shall:

(1) Witnesses. Disclose to the defendant the name and address of each person then known whom the State intends to call as a witness at the hearing or trial to prove its case in chief or to rebut alibi testimony;

(2) Statements of the Defendant. As to all statements made by the defendant to a State agent that the State intends to use at a hearing or trial, furnish to the defendant, but not file unless the court so orders: (A) a copy of each written or recorded statement, and (B) the substance of each oral statement and a copy of all reports of each oral statement;

(3) Statements of Codefendants. As to all statements made by a codefendant to a State agent which the State intends to use at a joint hearing or trial, furnish to the defendant, but not file unless the court so orders: (A) a copy of each written or recorded statement, and (B) the substance of each oral statement and a copy of all reports of each oral statement;

(4) Reports or Statements of Experts. Produce and permit the defendant to inspect and copy all written reports or statements made in connection with the action by each expert consulted by the State, including the results of any physical or mental examination, scientific test, experiment, or comparison, and furnish the defendant with the substance of any such oral report and conclusion;

(5) Evidence for Use at Trial. Produce and permit the defendant to inspect, copy, and photograph any documents, computer-generated evidence as defined in Rule 2–504.3(a), recordings, photographs, or other tangible things that the State intends to use at the hearing or trial;

(6) Property of the Defendant. Produce and permit the defendant to inspect, copy, and photograph any item obtained from or belonging to the defendant, whether or not the State intends to use the item at the hearing or trial.

(c) Matters Not Subject to Discovery by the Defendant. This Rule does not require the State to disclose:

(1) Any documents to the extent that they contain the opinions, theories, conclusions, or other work product of the State's Attorney, or

(2) The identity of a confidential informant, so long as the failure to disclose the informant's identity does not infringe a constitutional right of the defendant and the State's Attorney does not intend to call the informant as a witness, or

(3) Any other matter if the court finds that its disclosure would entail a substantial risk of harm to any person outweighing the interest in disclosure.

ed that he had not been provided these materials. Judge Hackner reset the trial for 10 May 2005 and ordered the State to provide complete discovery. Judge Hackner also instructed Jones on filling out subpoenas for documents in support of his defense. After further discussion, the Court concluded by stating, "I find that [Jones] has knowingly, freely, and voluntarily waived his right to counsel and he will represent himself."

Before the new trial date, Jones subpoenaed as a witness Rene Sandler, Esquire, his defense counsel in the Montgomery County proceedings. On 25 April 2005, he appeared before Judge Philip T. Caroom on a motion filed by Ms. Sandler to quash the subpoena. The record documents that on this occasion, Jones's express waiver of counsel was revisited:

> The Court: [L]et me confirm the Court I think twice has advised you about your right to have an attorney initially in November on this case. You advised that you thought you were going to make arrangements for a private attorney, and then in January the Court advised you again and you were provided information on how to contact a Public Defender. Since that time have you been making arrangements you think for a private attorney or a Public Defender, sir, or is it your choice that you want to go ahead and speak for yourself when you get to that trial date?

> Jones: Your Honor, first of all, I have talked to some private attorneys in reference to this case as the State already knows.... I decided that I'm ready to proceed by defending myself, Your Honor.

Judge Caroom followed up with questions similar to those asked by Judge Hackner, inquiring to ensure Jones knowingly and voluntarily waived counsel. After finding that Jones had waived counsel, the court moved on to determine Ms. Sandler's motion to quash the subpoena. Jones agreed that Ms. Sandler had no personal knowledge of the facts and all parties agreed that she should be excused from having to testify at trial.

Jones took advantage of the 25 April hearing to claim that he had not received any discovery. The State averred that it sent some discovery to him at the jail, but that there had been some problem with it getting to him because of an incorrect Department of Corrections (DOC) number.[4] The prosecutor proffered that she had sent "hundreds and hundreds of pages of discovery." Jones admitted that he received police reports, but claimed he had not received audio and video discovery or medical reports. The State reported that the former had been sent the Friday prior to the hearing. The prosecutor also represented that she subpoenaed the medical reports, but that the subpoena remained outstanding. Jones argued that he was prejudiced by the State's failure to provide these discovery materials and therefore the case against him should be dismissed, claiming "with the passage of time and continuous confinement ... [h]ow can I prepare ... without the discovery?" Regarding the discovery situation, Judge Caroom opined:

> [a]s to discovery ... the State should not be permitted to use the tapes and medical records [5] in its case because of the delay in production of those to you. They can present anything based on ... the police reports.... That was disclosed to you apparently ... many weeks ago. However, as to the medical records and the actual audiotapes themselves, I would exclude those. Unless, sir, if you want to put them in you can offer them.

The court explained to Jones that, if he chose in his defense to submit partial information from the tapes, the State then may be able to offer other evidence to complete the "picture" created thereby. The court continued,

> [s]o you ought to be cautious in offering some part of it yourself. Now the other aspect, sir, that you are raising is if you think that you don't have enough time to complete

---

**4.** Apparently documents are directed and delivered to inmates based on their Department of Corrections number.

**5.** The parties later stipulated that Jones's medical records would be admitted in evidence at trial.

preparation of your case because you haven't had a chance to listen to the tapes yet. You have not asked for a postponement. All you have asked is [that] the case be dismissed. I am denying your request to dismiss it. If you are asking for a postponement that would have to be considered by Judge Manck [the County Administrative Judge], and you need to make that request ASAP if you want to make it. . . . Any question about that, sir?

Jones: Not in particular reference to that. I'm crystal clear on that. . . .

As the hearing continued, Jones questioned whether he had received all the police reports. He asserted that he had received only police reports from Montgomery County, but none from Anne Arundel County. The court found it prudent to have what it called a "status conference and continued hearing" to determine what discovery materials he had received. The court scheduled this hearing for the following week (3 May 2005) and instructed the State that it would need to provide evidence showing that Jones had received all required discovery materials. If those materials had not been provided, postponement of trial or dismissal for failure to provide discovery materials would again be considered.

Jones again appeared, without counsel, before Judge Caroom on 3 May 2005. He repeatedly declined to request a postponement in order to have more time to prepare for the trial, stating that he preferred to proceed to trial on 10 May 2005. The transcript of the hearing chronicles that the court again asked Jones if he should be representing himself. He reiterated that this was his choice. In reference to the discovery dispute, Jones elected that he would not need the audio, video, and medical records at trial. Nonetheless, with regard to the delivery of 937 pages of written police reports, he made a "motion to dismiss for violation of discovery rules." The State showed, and the court found, that Jones signed for and received piecemeal delivery at the jail of various discovery materials on the 11th, 13th, and 21st of April. Additionally, he received anew, in a single delivery on 28 April, the full 937 pages of police reports. The court, in denying Jones's motion

to dismiss, nonetheless urged him, "[t]he Court is not going to count it against you [if you ask] for a postponement." The Court continued, "if this case is delayed a few extra days or even a few weeks extra, however much time you might like, it is not going to make a big impact." "I will give you as much time as you want to prepare, or at least I think that if you asked for a postponement [the] Court would give you more time to prepare."

Jones expressed some concern over his inability to interview witnesses while he was incarcerated. The court responded:

Well, sir, it is not the job of the Court to be a Defense lawyer for you and tell you how to arrange for witnesses to be interviewed and how to have them subpoenaed and so forth. If you wanted a lawyer you were given the opportunity and the advice about how to make those arrangements. . . . A lawyer could arrange to have another person go out and interview that person for you, an investigator. He or she . . . could go out and interview them himself. But if you have some built in constraints in DOC I am not going to advise you on . . . other methods that you might use. That would be up to you to figure out yourself if you are representing yourself.

. . . .

Again, sir, if you think that more time would solve the situation I will give you a last opportunity today. You can still ask for more time. We will send the case upstairs and you can request that postponement and in all likelihood Judge Manck would grant it. Do you want to ask that, or do you want to go ahead in the position that you are in?

Jones: As of today, Your Honor, I am not postponing this trial date.

Accordingly, the case remained scheduled for trial on 10 May 2005.

On the morning of 10 May 2005, a hearing on Jones's request for a postponement of trial took place before Judge Pamela L. North, designee of the County Administrative

Judge. The transcript of the hearing shows that she questioned Jones concerning his lack of an attorney.

The Court: Okay, and having considered what the charges are I see that you are here without an attorney today, is that right.

Jones: Yes, ma'am.

The Court: All right. Did you think of getting an attorney before today?

Jones: Yes, ma'am.

. . . .

I didn't want one, Your Honor.

Judge North asked Jones the same questions that Judge Hackner and Judge Caroom asked concerning his waiver of counsel. He shifted the verbal exchange to his ongoing complaints about the discovery situation. He asked Judge North if he could have a continuance to review the discovery, claiming he hadn't had a chance to go through the many pages. She asked:

The Court: Okay. Sir, will the request for postponement have any bearing on . . . whether or not you want to have an attorney represent you?

Jones: Well, right now I haven't made that decision, but I want to contemplate . . . that decision in reference to . . . my continuance.

The Court: Okay. All right. Well, sir, you do . . . understand . . . that you don't have an unlimited time to decide whether you want an attorney or not. That decision has to be made between your initial appearance date and your trial date, and today is your first trial date.[6] Now I am not saying whether I would grant you a postponement or not, but I am just explaining to you that is the time period when you have to make the decision about wanting an attorney or not. Because we expect all defendants to come into Court

---

6. She was mistaken. Jones's first trial date was 17 February, which had been continued to 10 May.

knowing whether they want an attorney and actually having their attorney with them on the trial date.

Judge North attempted to separate Jones's decision to represent himself from his discovery complaint for seeking a trial postponement. She asked, "can we just decide the waiver of counsel issue first. . . . Is there any connection between the fact that you did not get to finish looking at all your discovery and whether or not you want an attorney?" Jones evaded a forthright response, stating that he "would like to keep [his] options open in reference to that." The Administrative Judge's designee allowed him to renew his claim that he had not received discovery properly. He reiterated that the discovery problems raised previously entitled him to a postponement. In response, the State pointed out that Judge Caroom, when Jones appeared before him on 25 April and 3 May, asked him if he would like a postponement and that he had declined to make such a request. The State argued that "these issues were all exhaustively litigated." The State continued, "we have brought witnesses in from all over the State, from Montgomery County . . ., Baltimore City, . . . [and] Annapolis . . .," concluding that "[h]e is just trying to stall this trial, and it is a shameless tactic and you should consult with Judge Caroom and deny the Defendant's postponement." The exchange between the Judge, the prosecutor, and Jones continued, bouncing between waiver of counsel and the discovery situation. When further questioned about why he had not sought a continuance before Judge Caroom, Jones reiterated that he wanted to keep his options open. He continued,

[a]s of today I'm stating for the records that I don't have adequate time to go through this discovery. That's one. Two is the fact that I'm in limbo as far as getting some counsel[ ] in reference to these charges.

. . . .

I feel content with what I'm basically doing. But my whole point as far as today is concerned is that I would like . . . a continuance.

Judge North questioned Jones as to whether he was consulting attorneys and whether he had funds to engage a private attorney. He responded that he did consult with attorneys, but that he was indigent. She observed that he had had six months to apply for a Public Defender. When pressed on whether he needed an attorney, Jones again responded that he wanted to keep his options open. Judge North responded, "We can't just postpone cases indefinitely as you can imagine and let people reconsider and reconsider their options."

After a brief recess, Judge North ruled on Jones's request for postponement.

[C]learly Judge Caroom had asked repeatedly it appears . . . whether or not Defendant would want a postponement and that you declined that and said numerous times—he made that request to you and you said no. . . . Now the State is disadvantaged. They have all their witnesses here today. So I am not going to grant your request for a postponement.

Evincing an incomprehension of what "No" means in any of its parts, Jones continued to press his arguments before her. Once again, he bounced between the discovery and counsel issues until Judge North stopped him and renewed her denial of his postponement request:

The Court: Okay. Your request is denied, sir. And part of the reason, sir, is that you had this opportunity at least on three occasions—

Jones: Well, I'm not capable of representing myself.

The Court: Three occasions on May 3rd you could have asked for a postponement. You said you didn't need any additional time to prepare. You knew you had 900 pages of discovery, and also the fact that . . . you have answered my questions that you made no attempt to get a Public Defender . . . you would be a lot better off with a Public Defender. . . .

The trial proceeded the same day. Judge Paul G. Goetzke, the assigned trial judge, inquired of Jones if he wanted to

elect a jury or a bench trial. He responded that he wanted an attorney to represent him. The court, however, finding that this issue had been considered and determined by Judge North, denied the request. Jones next asked that he be sent back to Judge North. This request also was denied. After explaining the characteristics of a jury trial in great detail, Judge Goetzke asked whether there was anything that he should know that would preclude Jones from making a knowing and intelligent decision about the mode of trial he wished. Jones again asserted that he needed counsel. He averred that he was not capable of making a decision on the mode of trial. The court, however, determined that Jones was capable of making that decision based upon his education and mental and physical condition. After Jones insisted that he did not have the capacity to make the decision and refused to make it, the court elected a jury trial for him in order to protect his fundamental right. During the jury selection, Jones again asked for legal representation. His request was denied.

Trial proceeded with Jones representing himself. Throughout the trial, he continued to protest that he needed legal representation. At one point, he told the jury he had been forced to represent himself. In closing arguments, he emphasized to the jury that he had done a lot of things during the case that he didn't know how to do; that he did not know how to defend himself. The trial took five days. At its conclusion, the jury convicted Jones of two counts of second degree assault, two counts of kidnaping, one count of resisting arrest, one count of reckless driving, one count of negligent driving, and one count of failure to maintain a reasonable and prudent speed. He was acquitted of two counts of first degree assault and one count of second degree assault.

At sentencing, Jones claimed that he finally had procured counsel, although counsel was not present and he admitted that he had not paid an attorney to represent him. Judge Goetzke responded, "[a]ll right, sir. You have been using this issue time and time ... again in your case, and that is an attempt to buy you—to get postponements in this case, because you show up at court without a lawyer and then you ask

for one." Jones was sentenced to 30 years' incarceration, as noted previously, and fines totaling $1500.00.

Jones, represented by an Assistant Public Defender in the Appellate Division of the Office of the State Public Defender, appealed to the Court of Special Appeals, presenting four arguments for reversal: 1) he was improperly denied his right to the assistance of counsel; 2) his postponement requests were denied improperly; 3) the trial court failed to comply with the provisions of Maryland Rule 4–215; and 4) the trial judge erred in failing to merge for sentencing purposes the convictions for speeding and negligent driving into that for reckless driving. The intermediate appellate court decided the appeal in a reported opinion. *Jones v. State,* 175 Md.App. 58, 924 A.2d 336 (2007).

Of pertinence to the case as it reaches us, the intermediate appellate court determined that Jones expressly waived his right to counsel. *Jones,* 175 Md.App. at 79, 924 A.2d at 348. The court next considered whether Judge Goetzke properly denied Jones the right to revoke his waiver of counsel. *Id.* Finding that a postponement would have been necessary if the revocation were to be granted, the court noted that only the County Administrative Judge (or his/her designee) was authorized to exercise that discretion. *Jones,* 175 Md.App. at 79–85, 924 A.2d at 348–51. The Court of Special Appeals found that Judge North, acting in that capacity, properly exercised her discretion and that the postponement request was properly denied. *Id.* Further, the Court of Special Appeals determined that Judge Goetzke had not abused his discretion in finding that Judge North had determined the postponement for the purposes of securing counsel. *Jones,* 175 Md.App. at 84–85, 924 A.2d at 351–52. Finally, the court determined that Judge Goetzke properly exercised his discretion in denying Jones's request to be sent back to Judge North. *Id.* The intermediate appellate court also examined his assertion that Judge North improperly denied his request for a postponement to further review the State's provided discovery materials. Applying to Judge North's actions the

standard of Maryland Rule 4–271(a),[7] the court determined that she had not abused her discretion in denying Jones's request. *Jones,* 175 Md.App. at 85–86, 924 A.2d at 352. Finally, the Court of Special Appeals agreed with his claim that the convictions for negligent driving and failure to maintain a reasonable and prudent speed merged into the conviction for reckless driving as lesser included offenses. *Jones,* 175 Md.App. at 86–89, 924 A.2d at 352–54. Thus, the court vacated Jones's fines for "negligent driving" and "failure to maintain a reasonable and prudent speed," but otherwise affirmed the convictions. *Id.*

Granting Jones's petition for writ of certiorari [8] (401 Md. 172, 931 A.2d 1095 (2007)), we accepted this case to consider whether Judge North, the County Administrative Judge's designee, and Judge Goetzke, the trial judge, properly exercised their respective discretion regarding Jones's postponement requests and his attempt to revoke his waiver of the right to counsel.[9]

---

7. (a) Trial Date in Circuit Court.
    (1) The date for trial in the circuit court shall be set within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the circuit court pursuant to Rule 4–213, and shall be not later than 180 days after the earlier of those events. When a case has been transferred from the District Court because of a demand for jury trial, and an appearance of counsel entered in the District Court was automatically entered in the circuit court pursuant to Rule 4–214(a), the date of the appearance of counsel for purposes of this Rule is the date the case was docketed in the circuit court. On motion of a party, or on the court's initiative, and for good cause shown, the county Administrative Judge or that judge's designee may grant a change of a circuit court trial date. If a circuit court trial date is changed, any subsequent changes of the trial date may be made only by the county Administrative Judge or that judge's designee for good cause shown.
    (2) Upon a finding by the Chief Judge of the Court of Appeals that the number of demands for jury trial filed in the District Court for a county is having a critical impact on the efficient operation of the circuit court for that county, the Chief Judge, by Administrative Order, may exempt from this section cases transferred to that circuit court from the District Court because of a demand for jury trial.

8. The State declined to file a cross-petition.

9. We note that whether Jones properly waived counsel in the first instance is not presented for our review. As to that issue, the Court of Special Appeals decided that

## III

### *A.*

According to the Sixth Amendment of the U.S. Constitution, made applicable to the States through the Fourteenth Amendment, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." Doubtlessly, "[t]he right of one charged with [a] crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours." *Gideon v. Wainwright,* 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963). In like vein, Article 21 of the Maryland Declaration of Rights states, in applicable part, "in all criminal prosecutions, every man hath a right ... to be allowed counsel...." This right is of great import.

> Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and

---

[o]n this record, we have no difficulty whatsoever in concluding that there was full compliance with Rule 4–215(b) [required for a waiver of counsel], including the requirement in that section that the record reflect 'compliance with the provisions of section (a) of the rule [specifying what a court must do when a Defendant makes his/her first appearance without counsel]. It follows that Judge Hackner did not err in finding, on February 17, 2005, that appellant had expressly waived his right to counsel pursuant to the rule.

*Jones,* 175 Md.App. at 79, 924 A.2d at 348.

illiterate, or those of feeble intellect. If in any case, civil of criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense.

*Powell v. Alabama,* 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932).

■ Equally fundamental, however, is a defendant's right to proceed without counsel—the right to self-representation. U.S. Const. amends. VI & XIV; Md. Decl. of Rights, Art. 21. "[T]he Sixth Amendment right to the assistance of counsel implicitly embodies a correlative right to dispense with a lawyer's help." *Faretta v. California,* 422 U.S. 806, 814, 95 S.Ct. 2525, 2530, 45 L.Ed.2d 562 (1975) (citing *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 241, 87 L.Ed. 268 (1942)). Indeed,

> it is one thing to hold that every defendant, rich or poor, has the right to the assistance of counsel, and quite another to say that a State may compel a defendant to accept a lawyer he does not want. The value of state-appointed counsel was not unappreciated by the Founders, yet the notion of compulsory counsel was utterly foreign to them. And whatever else may be said of those who wrote the Bill of Rights, surely there can be no doubt that they understood the inestimable worth of free choice.

*Faretta,* 422 U.S. at 833–34, 95 S.Ct. at 2540, 45 L.Ed.2d 562; *see also Gregg v. State,* 377 Md. 515, 548, 833 A.2d 1040, 1060 (2003) (noting, like *Faretta,* that the right to counsel "grants the accused not only the right to be represented by counsel, but also the right to make [a] defense without assistance of counsel").

■ A defendant may assert the right to self representation in a criminal matter by a known and intentional relinquishment of the right to representation by counsel. *State v. Campbell,* 385 Md. 616, 627, 870 A.2d 217, 223 (2005) ("A waiver of the right to counsel must 'ordinarily' be 'an inten-

tional relinquishment of a known right or privilege.' " (quoting *Leonard v. State,* 302 Md. 111, 119, 486 A.2d 163, 167 (1985))). Such a relinquishment is established by an inquiry ascertaining first, whether a defendant "clearly and unequivocally" wants to defend himself/herself, and second, whether the defendant has made a competent and intelligent waiver of the right to counsel. *Snead v. State,* 286 Md. 122, 127–30, 406 A.2d 98, 101–02 (1979); *see also* Maryland Rule 4–215.

## *B.*

█ A defendant who initially invokes his/her right to proceed in proper person later may determine that he/she prefers to proceed with counsel. The right to revoke an earlier waiver of counsel, however, is not an unqualified right exercisable without regard to the prevailing circumstances in, or posture of, a given case. Specifically, if a defendant, having waived counsel expressly, desires thereafter to revoke that waiver, "no postponement of a scheduled trial or hearing date will be granted to obtain counsel *unless the court finds it is in the interest of justice to do so.*" Maryland Rule 4–215(b) (emphasis added).[10]

█ As the Court of Special Appeals noted in this case, "[a] discretionary ruling will generally not be deemed an abuse of discretion unless it is 'well removed from any center mark imagined by the reviewing court' or is 'beyond the fringe of what' the reviewing court 'deems minimally acceptable.' " *Jones,* 175 Md.App. at 81, 924 A.2d at 349 (citing *Gray v. State,* 388 Md. 366, 383, 879 A.2d 1064, 1073 (2005)). An abuse of discretion might occur when "the ruling either does not

---

10. Such language requires a judge to exercise his/her discretion in determining whether to grant a postponement so that a defendant might secure counsel. In *Gray v. State,* 388 Md. 366, 879 A.2d 1064 (2005), we interpreted similar language, "[t]he court may reopen a postconviction proceeding that was previously concluded if the court determines that the action is in the interests of justice," to have just such a meaning. We said, "[t]he requirement to exercise discretion prevents the court from acting arbitrarily." *Gray,* 388 Md. at 382, 879 A.2d at 1073.

logically follow from the findings upon which it supposedly rests or has no reasonable relationship to its announced objective." *Gray*, 388 Md. at 383–84, 879 A.2d at 1073–74 (quoting *Dehn v. Edgecombe*, 384 Md. 606, 628, 865 A.2d 603, 616 (2005)).

No reported Maryland appellate opinion before the present case has considered construing the term "in the interest of justice" with respect to Maryland Rule 4–215(b), but both appellate courts have considered the same phrase in other contexts. As the Court of Special Appeals noted in its opinion in the present case, "that phrase is found elsewhere in the Maryland Rules of Procedure, and its meaning has been illuminated in the case law." *Jones*, 175 Md.App. at 80, 924 A.2d at 349.

In the context of Maryland Rule 4–331(a), the term "in the interest of justice" is the standard used by a trial court in determining whether to order a new trial in a criminal matter. The Court of Special Appeals interpreted the term in that context in *Love v. State*, 95 Md.App. 420, 427, 621 A.2d 910, 919 (1993) as "virtually open-ended." The court noted that the sweep of the term encompasses a "broad latitude." *Id.* In *Gray*, 388 Md. at 382 n. 7, 879 A.2d at 1073 n. 7, we addressed the phrase as used in describing the basis upon which a court may reopen a post-conviction proceeding—when it determines that such an action is in the "interest of justice." *See also* Maryland Code, Criminal Procedure Article (2001), § 7–104. There, we agreed that the term includes "a wide array of possibilities." *Gray*, 388 Md. at 382 n. 7, 879 A.2d at 1073 n. 7.

The phrase is used in many other places in the Maryland Code and the Maryland Rules. *See, e.g.,* Maryland Code, Courts and Judicial Proceedings (1974, 2006 Repl. Vol.), § 10–408 (empowering the court to determine what portions of an intercepted communication "in the interest of justice" may be provided to an aggrieved person for inspection); Maryland Code, Criminal Procedure (2001), § 12–401 (noting that a court may take actions that protect the right of innocent persons that are "in the interest of justice"); Maryland Code,

Family Law (1984, 2006 Repl. Vol.), § 9.5–209 (granting the court the discretion to reveal the identity of a party or child "in the interest of justice" where a party alleges that the revelation would endanger the health safety or liberty of the child or party); Maryland Rule 2–327 (allowing "in the interest of justice" a court to transfer a case filed in the circuit court to the district court, rather than dismissing it); Maryland Rule 2–419 (empowering a court to allow a deposition to be used at trial, despite the absence of the witness, if the court finds it is "in the interest of justice"); Maryland Rule 3–326 (allowing a court to dismiss a case for improper venue or to transfer it "in the interest of justice" to its proper venue).

### C.

Jones and the State seem to agree that the term "in the interest of justice" grants wide discretion. As the Court of Special Appeals noted, "[t]his conclusion is in accord with the general rule that the decision to grant or deny a postponement is discretionary." *Jones,* 175 Md.App. at 81, 924 A.2d at 349 (citing *Abeokuto v. State,* 391 Md. 289, 329, 893 A.2d 1018, 1041 (2006)).

Jones suggests that, in aid of the exercise of this discretion, this Court should adopt five factors he discovered in a California case, *People v. Elliott,* 70 Cal.App.3d 984, 139 Cal.Rptr. 205 (1977).[11] Were we to do this, he avers, a trial court may "exercise meaningful discretion in ruling on a defendant's request to change from self-representation to representation by counsel." We decline to bind trial courts to such specific considerations when confronting whether to grant a defendant,

---

11. These factors are:
    (1) defendant's prior history in the substitution of counsel and in the desire to change from self-representation to counsel-representation, (2) the reasons set forth for the request, (3) the length and stage of the trial proceedings, (4) disruption or delay which reasonably might be expected to ensue from the granting of such motion, and (5) the likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own attorney.
    *Elliott,* 139 Cal.Rptr. at 211.

who expressly waives counsel previously, a postponement of trial to secure counsel. An individual case presents individual considerations tailored to its unique circumstances.[12]

For example, in *Love*, the intermediate appellate court discussed an illustrative list of grounds on which a new trial might be granted. 95 Md.App. at 427, 621 A.2d at 914 (citing *State v. Devers & Webster*, 260 Md. 360, 374, 272 A.2d 794, 801 (1971)). The court noted the difficulties that adhere, however, when appellate courts place limiting factors on the exercise of broad discretion "in the interest of justice." *Id.*

> It was the holding of *State v. Devers and Webster* that a new trial could be granted on grounds of evidentiary insufficiency only in the case where the evidence was so legally insufficient, as a matter of law, that it could not, even if believed totally and given maximum weight, support the verdict. Since that time, the decision in the case of *In re Petition for Writ of Prohibition*, 312 Md. 280, 539 A.2d 664 (1988), has overruled that limiting provision of *State v. Devers and Webster* and empowered the trial judge to grant a new trial not simply when the evidence is legally insufficient as a matter of law but also when the verdict, in the judgment of the trial judge, is so against the weight of the evidence as to constitute a miscarriage of justice. This broader latitude is in keeping with the provision ... that a judge may order a new trial "in the interest of justice."

*Love*, 95 Md.App. at 427, 621 A.2d at 914.

The prevailing common law standard for the review of the exercise of trial court discretion—an abuse of discretion exists when a ruling does not " 'logically follow from the findings

---

**12.** When deemed advisable to supply a sequence of factors to consider in other circumstances, we have expressed our determination in a relevant rule; see for example Maryland Rule 2–327(a)(3)(B) ("In determining whether a hearing in the District Court is in the interests of justice, the court shall consider (i) the safety of each person eligible for relief, (ii) the convenience of the parties, (iii) the pendency of other actions involving the parties or children of the parties in one of the courts, (iv) whether a transfer will result in undue delay, (v) the services that may be available in or through each court, and (vi) the efficient operation of the courts.").

upon which it supposedly rests' " or when a ruling " 'has no reasonable relationship to its announced objective' "—suffices to guide trial courts in acting on a request for postponement of trial based on a defendant's desire to secure counsel. *Gray,* 388 Md. at 383, 879 A.2d at 1073–74 (quoting *Dehn v. Edgecombe,* 384 Md. 606, 628, 865 A.2d 603, 616 (2005)).

## *D.*

We turn now to whether the denial of Jones's request for a postponement was "an abuse of discretion." Of central import to this question is the issue of *who* has discretion to act on a trial postponement request. As to this, the Maryland Rules are clear. Only a County Administrative Judge, or that judge's designee, may act on a postponement request advanced in a criminal trial in a circuit court. Maryland Rule 4–271 ("On motion of a party, or on the court's initiative, and for good cause shown, the county administrative judge or that judge's designee may grant a change of a circuit court trial date."). Despite Jones's attempts to persuade us otherwise, a full review of the record indicates that Judge North, acting as the designee of then County Administrative Judge Manck, properly denied a postponement upon consideration of both Jones's desire for more time to review discovery and his late-blooming desire for an attorney.

Jones characterizes the substance of his appearance before Judge North as one in which she considered only his request for a postponement based on his asserted need for additional time to review the police reports delivered as discovery responses. Jones asserts that Judge North did not consider or rule on a request for time to obtain counsel. Rather, according to Jones, he broached the issue of a postponement in order to procure counsel for the first time solely before Judge Goetzke, the trial judge, at which point Jones asked to be returned to Judge North's chambers or courtroom. Jones selectively proffers portions of the record before Judge North so that it might appear that the issue of counsel was not part of her postponement consideration. Jones focuses on two points in the transcript. First, after Judge North initially

brought up the issue of counsel, Jones asserted "[w]ell, actually, Your Honor, this [postponement request] is not an issue of representation as far as counsel. This is an issue in reference to me having discovery." Second, at the end of the hearing, Judge North stated to Jones, "you would be a lot better off with a public defender who has been to law school." While these short brush strokes may create an illusion that Judge North did not determine whether Jones sought or should receive a postponement to procure counsel, i.e., revoking his prior express waiver of counsel, it is not difficult for us to color the remaining numbers in the overall picture that is the complete record. In consideration of the full record, we conclude that Judge North considered Jones's postponement request based on a late articulation of a desire to secure counsel.

Our review of the transcript indicates that Jones demonstrated, as matters unfolded before Judge North, an evolving realization that he wanted counsel. Judge North considered whether to grant Jones a continuance to procure counsel before finally and conclusively denying postponement of the trial. The Court questioned Jones, "[s]ir, will the request for postponement have any bearing on ... whether or not you want to have an attorney represent you?" Jones responded, "[w]ell, right now I haven't made that decision, but I want to contemplate ... that decision in reference to ... my continuance." Later, Jones stated, "as of today I'm stating for the records that I don't have adequate time to go through this discovery. That's one. Two is the fact that I'm in limbo as far as getting some counseling in reference to these charges." Jones explained,

[b]ecause I had the opportunity to confer with a few attorneys in reference to the nature of the charges the State is charging me with.

. . . .

And under their understanding, I mean, I—the only reason why I'm basically doing this, Your Honor, is the fact that I feel content with what basically I'm doing. But my whole

point as far as today is concerned is that I would like . . . a continuance

. . . .

On the State's suggestion that Judge North confer with Judge Caroom, before whom Jones had declined three times to seek a postponement, Judge North stated that she would speak to him. Before she might, however, she asked Jones, "[s]ir, what attempts have you made to speak to attorneys? You said you conferred with several attorneys." Jones responded that he consulted with attorneys every other day from the jail, but that he did not have the funds to pay a private attorney. Judge North pushed on, "[w]ell did you have a reasonable expectation that someone was going to take your case for free?" In response, Jones alluded to the "high-profile" nature of the case, pointing out that it had been going on for two years, and that he believed there were double-jeopardy issues. He concluded, "I would like this continuance . . . to weigh out my options." The court responded by pointing out that Jones had had six months to think about and pursue his options concerning representation. The court continued,

> you can't keep your options open forever. There are time limits. The time for you to decide whether you wanted an attorney was between that November date and your trial date. You are supposed to consider those options [and] come in with your attorney on your trial date. We can't just postpone cases indefinitely as you can imagine and let people reconsider and reconsider their options.

The dialogue continued. Jones "clarified" that he would accept a private attorney or a pro bono attorney appointed by Judge North, but that he did not want a public defender. At this point, the court recessed so that Judge North could review Judge Caroom's notes. The court returned and announced, "[s]o, sir, I think that you have been offered the opportunity to have a postponement prior to today. Now the State is disadvantaged. They have all their witnesses here today. So I am not going to grant your request for a

postponement." Yet, while still before Judge North, Jones repeated his arguments regarding his asserted inability to review discovery and his lack of counsel. The hearing finally ended with the following colloquy:

> The Court: Okay. Your request is denied, sir. And part of the reason, sir, is that you had this opportunity at least on three occasions—
>
> Jones: *Well, I'm not capable of representing myself.*
>
> The Court: Three occasions on May 3rd you could have asked for a postponement. You said you didn't need any additional time to prepare. You knew you had 900 pages of discovery, *and also the fact that ... you have answered my questions that you made no attempt to get a Public Defender ...* you would be a lot better off with a Public Defender. . . .

Although Jones *may* have begun the hearing before Judge North with the purpose of seeking a continuance to review discovery responses, as events unfolded, Jones apparently came to the view, albeit rather late in the "day" of his case, that he wished counsel going forward and needed a continuance from Judge North to pursue that. When Judge North told Jones that he would not have unlimited time to decide whether to obtain counsel, he tried to negotiate for an attorney other than a public defender.[13] Judge North denied

---

**13.** It is without dispute that an indigent criminal defendant is entitled to adequate representation, but not to counsel of his/her choosing. *See Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624, 109 S.Ct. 2646, 2652 105 L.Ed.2d 528(1989) ("Petitioner does not, nor could it defensibly do so, assert that impecunious defendants have a Sixth Amendment right to choose their counsel. The Amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts."); *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988) ("[A] defendant may not insist on representation by an attorney he cannot afford."); *State v. Miller*, 337 Md. 71, 86, 651 A.2d 845, 852 (1994) ("The indigent defendant, however, does not have an absolute right to choice of counsel."); *Fowlkes v. State*, 311 Md. 586, 605, 536 A.2d 1149, 1159 (1988) ("[F]or indigent defendants unable to retain private

postponement even as Jones continued exclaiming, "[w]ell, I'm not capable of representing myself." Just as the panel of the Court of Special Appeals concluded from this record, we find that Judge North, the designee of the County Administrative Judge, considered, when denying his request for a postponement, Jones's pleas regarding discovery and his epiphany regarding the desirability of legal counsel.

Jones also contends that Judge North did not exercise properly her discretion in denying Jones's request for a postponement in another regard. He asserts that Judge North could not have acted independently because she reviewed Judge Caroom's notes and considered them in denying Jones's request for a postponement. Alternatively, Jones argues that Judge North abused her discretion by denying Jones's request for a postponement because, in his view, "complete discovery" was not provided until twelve days before trial and no previous request for a postponement had been made by Jones. Jones's argument here is couched solely in terms of the discovery situation because, in his view, he made no request before Judge North for a postponement to secure counsel. As noted above, we disagree with this characterization of the record. We conclude that Judge North properly exercised her discretion in considering the postponement for *either* reason.

As to his first contention, Jones would have us believe that Judge North, after listening to Jones's request for a postponement, took a recess to review Judge Caroom's notes, and, upon returning and without hearing further from either party, ruled that "based on Judge Caroom's findings a postponement is denied." [14] The transcript tells another tale. Jones's hearing before Judge North consumed nearly 100 pages of transcript. During this time, Judge North questioned Jones extensively about both the discovery issue and the need for an attorney. As to the discovery matter, Jones

---

counsel, the right to counsel is but a right to effective legal representation; it is not a right to representation by any particular attorney.").

**14.** Judge North did *not* make this statement.

received a full version of the relevant discovery responses at least 12 days before trial. Moreover, the State explained that the discovery responses also had been provided in three batches prior to the date on which the sum version was provided, and that Judge Caroom had not found the State in violation of discovery rules thereby. Judge North offered Jones the opportunity to explain why he did not want a postponement a week earlier when it was virtually offered to him by Judge Caroom. The record demonstrates that Judge North considered Jones's answers. She observed that nothing had changed between the time of Jones's appearance before Judge Caroom and his appearance before her.

We disagree with Jones's characterization that Judge North could not be said to have acted independently assuming she reviewed Judge Caroom's notes. Indeed, as we wrote in *State v. Frazier*, 298 Md. 422, 453, 470 A.2d 1269, 1285 (1984), an important reason that we delegate to a County Administrative Judge or his/her designee the power to decide postponements is that "it is the administrative judge who has an overall view of the court's business." We find it *preferable* that such a judge review all relevant and available facts when determining whether to grant or deny a postponement. We said in *Frazier*, "the judgment of the administrative judge, concerning the need for a postponement and the rescheduling of a criminal case, should be accorded the greatest weight." *Id.*; *see also Abeokuto v. State*, 391 Md. 289, 329, 893 A.2d 1018, 1041 (2006) ("The decision whether to grant a request for continuance is committed to the sound discretion of the court." (citing *Ware v. State*, 360 Md. 650, 706, 759 A.2d 764, 794 (2000))). We find unpersuasive Jones's arguments that we should disturb the judgment here. It appears to us that Judge North's decision "logically follow[s] from the findings upon which it supposedly rests" and that the ruling has a "reasonable relationship to its announced objective"—to uphold the "interests of justice." [15] *Gray*, 388 Md. at 383, 879 A.2d at 1073–74.

---

**15.** The "interest of justice" seemed well served by denying Jones's 11th-hour postponement request. As Judge North stated, "sir, I think that

## E.

We reject Jones's contention that he was improperly denied by Judge Goetzke a second chance to appear before Judge North. The lynchpin of this argument is that "[Jones's] request for a postponement in order to secure the assistance of counsel was adduced for the first time before Judge Goetzke." We already determined that this is a mischaracterization of the record. While it was within Judge Goetzke's discretion to send Jones back to Judge North, he was not duty-bound to do so on the facts of this case. Recognizing that Judge North exercised her discretion on the issue, Judge Goetzke stated, "[t]he issue has been exhaustively considered in this Court. The fact that you have a new Judge does not change the previous rulings, but you may—I will consider that motion to be renewed and denied again...."

The record indicates that Jones had many opportunities to secure counsel prior to the day of trial, but knowingly waived those opportunities despite the solicitous suggestions by various judges that he would be better off with legal representation. *Compare Richardson v. State,* 381 Md. 348, 361, 849 A.2d 487, 495 (2004), where we held that ("merely showing a defendant a videotape of a judge providing the advice and instruction required by Rule 4–215(a) is an insufficient predicate for a finding of waiver of counsel.... At the least there must be some inquiry to determine the defendant's understanding of the advice or instructions so given."). We agree with the Court of Special Appeals that *Fowlkes v. State,* 311 Md. 586, 536 A.2d 1149 (1988), is "particularly apt in this case." *Jones,* 175 Md.App. at 84–85, 924 A.2d at 351. There we upheld a trial court's denial of Fowlkes's day-of-trial request to discharge his attorney. We noted, "[a]lthough the right to counsel generally embodies a right to retain counsel of one's choice, a defendant may not manipulate this right so as

---

you have been offered the opportunity to have a postponement prior to today. Now the State is disadvantaged. They have all their witnesses here today. So I am not going to grant your request for a postponement."

to frustrate the orderly administration of criminal justice." *Fowlkes,* 311 Md. at 605, 536 A.2d at 1159. We see in this case the sentiment of *Fowlkes* echoed by both Judge North ("We can't just postpone cases indefinitely . . . and let people reconsider and reconsider their options.") and Judge Goetzke ("All right, sir. You have been using this issue time and time . . . again in your case, and that is an attempt to buy you—to get postponements in this case, because you show up at court without a lawyer and then you ask for one."). For the foregoing reasons, we conclude that Judge North and Judge Goetzke properly exercised their respective discretion in this case to deny Jones a postponement of his trial.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**